THOMPSON
*vs.*
THOMPSON.

Case 4.

### Thompson vs. Thompson.

PET. EQ.

APPEAL FROM CLARKE CIRCUIT.

1. The opinion of the judge that there is a great preponderance of testimony in favor of one party does not authorize the giving a peremptory instruction to the jury to find according to the opinion of the judge, even though he may be of opinion that it would be his duty to set aside a finding contrary to his opinion. It is the province of the jury to weigh the testimony and decide upon it

2. Upon the trial of an issue of fact by a jury, the instructions of the court should be hypothetical in all cases where there is evidence on both sides conducing to prove a particular fact or facts, and against it.

3. A party may, upon the evidence of his antagonist alone, assuming that evidence to be true, and every fact which it conduces to prove, move a peremptory instruction, which the court may give, (2 *Marshall*, 424,) but not upon his own evidence alone, or on his own evidence and that of his antagonist, unless his own evidence consists of record or uncontested official documents or writings.

[The facts of the case appear in the opinion of the court.—REP.]

*J. B. Huston* for appellants—

After there had been a jury in the case which could not agree on a verdict, at a subsequent term of the court another jury was sworn to try the issue formed as to the validity of the will of David Thompson, which purported to have been executed on the 31st day of May, 1850, and was proved and ordered to record at the July term of the Clarke county court, 1850. After each party had introduced their testimony, each party asked of the court certain instruc-

tions in writing, to be given as instructions to the jury. The court declined to give any proposition of either party, but instructed the jury peremptorily to find the issue for the will, and that the paper produced was the true last will and testament of David Thompson, deceased, and the jury so found their verdict. This action of the court was excepted to by the appellants, and a new trial was moved for by them on the ground—1. That the court erred in the peremptory instruction given to the jury. 2. That under the statute of wills of 1797, governing this case, the court had no power under any state of proof to give a peremptory instruction in the trial of the issue of will or no will. 3. Because the court erred in giving a peremptory instruction in this case, where there was evidence on both sides which was conflicting, and it was the province of the jury and not of the court to decide upon the weight of evidence. (*Statute Law*,, 1543.) All the power of the court in such cases is the power to grant a new trial if the court is not satisfied with the finding. But such an instruction is not warranted in any case where there is conflicting testimony. The court may instruct the jury peremptorily to find for the defendant upon the plaintiff's evidence alone, where every fact proved, and which the evidence conduces to prove, is taken as true, (3 *J. J. Marshall*, 173.) or where the evidence of the defendant is record evidence alone. (2 *Marshall*, 423.) But if any other than record evidence is produced by the defendant, its weight must be left to the jury. (1 *Monroe*, 170; 4 *Bibb*, 100.)

If the jury is instructed to find as in case of nonsuit, the party may suffer a nonsuit and commence *de novo;* but if the jury be instructed, as in this case, to find for a party, the consequences resulting from such a finding are different—no such privilege exists. The judge assumes the province of the jury, and becomes substantially the trier of facts.

The contestants of the will produced to the jury some twenty odd witnesses, proving facts which the

court, by admitting them, allowed to be competent testimony, and by his instruction refused to allow the jury to decide upon.

Waiving the question whether the testimony would have sustained a finding of the jury against the will, it is insisted that whatever may be the opinion of this court on that question, the instruction given by the circuit judge cannot be sustained on principle or authority.

*George Smith* on the same side—

Juries are to decide facts, and the court should not assume to decide facts for the jury. (*Salter vs. Myers,* 5 *B. Monroe,* 281.)

*Chilton Allan* for appellees—

The question in this case is whether the instruction of the court to the jury was justified by the proof. Whether there was evidence upon which a rational mind could find against the will. Is not this a case where this court would find for the will without hesitation ? Is it not a case in which a new trial should have been granted if the jury had found against the will? If, in either or all these cases, this court should be for sustaining the will, for what reason should this case be reversed ?

It is true that the line which separates the power of judges and juries over facts has never been plainly drawn. At certain distances on each side of the line we have clear views. The space between is not a line, but a tolerably broad belt of dim light. In this belt there has been a good deal of oscillation in different ages. In times when courts, as the instruments of tyrants, were grasping for power, there was cause for alarm. When the danger was removed it still continued to be a field for declamation. Efforts have always been made by the professed friends of the people to push the courts to the utmost verge of the twilight region that lies between, in favor of what is termed the rights and privileges of

juries. We suppose the courts are bound, and do take some notice of the history of their age, the tendency of the times, and the practical effect and consequences of their decisions. If in this, not perfectly defined and flexible region, good judges leaned one way in times of despotic rule, is it not proper they should lean a little the other way in times of licentious liberty? In a great portion of our country it is found impossible to find juries willing to find either for or against wills. It is made a public question, and has gone to the ballot box. On every jury you will find some who think it their duty to decide whether the testator has made his will according to law; others who esteem it their duty to inquire whether the testator has made a just distribution of his property. The consequence is, that in many courts there cannot be had a finding in either way. Dead men's estates are going to waste and justice stands still. Is it not then a time for the rigorous exercise of all the power which the courts possess? What practical good is to result from sending this case back if, in the opinion of this court, there is no rational mind which could decide this will invalid? None, it is supposed.

*Samuel Hanson and Garrett Davis* on the same side—

The bill was filed by the appellees in this case to set aside the will of David Thompson on two grounds —the incapacity of the testator, and the influence of the most favored devisee, James Thompson. The jury found in favor of the will, and a motion was made for a new trial on two grounds—1st. The error of the court in its instructions to the jury. 2d. That the finding of the jury was not sustained by the evidence.

Two juries had been impanneled in the case before, both of which failed to agree on a verdict.

Upon the last trial no effort was made to show any undue influence, but reliance was placed alone upon the incapacity of the testator. The sole ground

which we suppose will be relied upon, is the error of the court in its directions to the jury upon the law of the case.

The counsel argued—1. That the proof showed that it was the result of an intelligent mind, and that it was dictated wholly by the testator; and that the testimony of witnesses clearly establish the capacity of the testator. 2. After the evidence was concluded, the judge was asked by each party for instructions to the jury, which he declined to give, but remarked to the jury, that there had been one hung jury in the case; that he feared another, and if they should find that the paper set up was not the last will and testament of David Thompson, that he should feel constrained to set aside their finding and grant a new trial. That the preponderance of evidence was so great in favor of the will that he would instruct the jury to find the paper to be the true last will and testament of David Thompson. The evidence shows a case so conclusive in support of the will, that no verdict against it could be permitted to stand, and therefore this court will not disturb the verdict. The case of *Rogers vs. Rogers*, 2 *B. Monroe*, 324, is referred to as bearing on this question.

In support of the principle that though there is evidence on both sides, yet if the verdict of the jury be palpably against the weight of evidence, the court will set it aside. (See *Dorsey vs. Dorsey*, 1 *Marsh.*, 183; *Bennet vs. Runyan*, 4 *Dana*, 423; *Guthrie vs. Bryant*, 1 *Marsh.*, 333.)

Where a verdict is manifestly sustained by law and evidence, it is wrong and against law to disturb it. (See *Thomas and wife vs. Tanner*, 6 *Monroe*, 61; *Breckinridge vs. Anderson*, 3 *J. J. Marshall*, 717; *Emanuel, &c. vs. Cocke*, 6 *Dana*, 214; *Morton vs. Lawson*, 1 *B. Monroe*, 46; *Sims vs. Reed and wife*, 12 *B. Monroe*, 54 )

Jndge CRENSHAW delivered the opinion of the court:

In this controversy as to the validity or invalidity of the instrument purporting to be the last will and testament of David Thompson, the court was asked for several instructions by both the plaintiffs and defendants. But the court being of opinion that the preponderance of testimony was so great in favor of the will, declined to consider or to give any of the instructions asked, and instructed the jury peremptorily to find for the will. And the only question which it is necessary to decide is, whether the court was authorized by the principles of law to give this peremptory instruction.

One of the reasons assigned by the court for giving this instruction is, that there had been, upon a previous occasion, in the same case, one "hung jury," and he feared another. Another reason was, that should the jury find against the will, he should feel constrained to set aside the finding and grant a new trial.

The first reason assigned by the court for its instruction ought, it would seem, to have produced a different conclusion. The fact that there had been one "hung jury" in the case would rather argue that the testimony was conflicting, and presented such a state of case as to make it the peculiar province of the jury to weigh the testimony untrammelled by the court, and decide the case according to the weight of the evidence. The other reason grew out of the great preponderance of the testimony in favor of the will, and the duty which the court would feel itself under to set aside the verdict should the verdict be against the will.

This reason is also insufficient, we appehend, to authorize a peremptory instruction. Testimony had been given upon both sides, and that on the part of the contestants of the will, however weak in comparison with that given on the part of the defendants, certainly *conduced* to show that the testator might not have been of disposing mind and memory

THOMPSON
*vs.*
THOMPSON.

June 9.

1. The opinion of the judge that there is a great preponderance of testimony in favor of one party does not authorize the giving a peremptory instruction to the

THOMPSON
*vs.*
THOMPSON.

jury to find ac-
cording to the
opinion of the
judge, even tho'
he may be of
opinion that it
would be his du-
ty to set aside a
finding contrary
to his opinion. It
is the province
of the jury to
weigh the testi-
mony and de-
cide upon it.

at the execution of the will. The court, in stating that there was a great preponderance of testimony in favor of the will, thereby conceded that there was *some* testimony which might tend to a contrary conclusion. But he thought that when the testimony was weighed and compared it greatly preponderated in favor of the will—so much so, that he would have felt constrained to set aside a finding against the will, and grant a new trial. Our own opinion decidedly and unhesitatingly coincides with that of the circuit judge, that the great weight of the testimony was in favor of the will, and that its preponderance in its favor was so great that, had the finding been against the will it would have been his duty to set aside the verdict and grant a new trial. Still, it was the province of the jury, and not of the court, to weigh the testimony, and they should have been allowed to do so, unfettered by a peremptory instruction. The contestants of the will had a right to a verdict by the jury, free from the restraint which was put upon them.

2. Upon the
trial of an issue
of fact by a ju-
ry, the instruc-
tion of the court
should be hypo-
thetical in all
cases where
there is evi-
dence on both
sides conducing
to prove a par-
ticular fact or
facts, and a-
gainst it.

It is not the business of the court, when testimony has been produced upon both sides, conducing to establish the positions of both parties, to interpose, by way of peremptory instruction, and take from the jury a consideration and comparison of the testimony on both sides of the controversy. His powers, in such a state of case, are supervisory. He can revise the finding, and if, in his opinion, the finding is obviously and palpably against the weight of the testimony, he may, and will, set aside the verdict. But it is not the province of the court to interpose in the first instance by way of peremptory instruction, and direct a finding for one of the parties. Each party has a right to a verdict from the jury after an untrammelled investigation of the facts of the case under hypothetical, and not peremptory, instructions, whenever testimony has been produced upon both sides tending to opposite conclusions. The court, in the exercise of its supervisory power over verdicts,

and in setting them aside, may not inflict such serious injury to the successful party as by a peremptory instruction to find against him. If his verdict be set aside, he will have another opportunity, upon another trial, of strengthening his case by additional testimony. Whereas, if he be cut off by a peremptory instruction to find against him, there is an end of the case, and he will enjoy no further opportunity of strengthening his proof.

In the case of *Dallam vs. Handley*, 2 *Marshall*, 424, the court say: "It is a rule, that a party may move upon the evidence of his antagonist, assuming that evidence, and every fact which it conduces to prove, as true, and ask the court for a positive instruction. But he cannot make such a motion on his own evidence alone, or on his own evidence mingled with, or added to, that of the opposite party, unless his own evidence is composed of record, or uncontested official documents, or writings." The principle which is recognized in this instruction we take to be this: That, admitting the testimony of the party to be true, against whom a peremptory instruction is asked, yet the testimony of the other party being incontrovertible record testimony, no room is left for comparison, and the finding of the jury can be but one way. In such a state of case a peremptory instruction is authorized; but it is not authorized where the testimony on both sides is of the same kind and tendency, and where the jury must compare and weigh it, and when they can give credit, or refuse to give credit, to either a part or the whole of the testimony on each side.

We do not consider the principle laid down in the case of *Rogers vs. Rogers*, 2 *B. Monroe*, 324, referred to by the counsel of the appellees, as in conflict with the principle recognized in the case of *Dallam vs. Handley, supra*. In the case of *Rogers vs. Rogers*, the court instructed the jury positively, that there was no evidence of either fraud or improper influence on the testator. And the court say in regard to this in-

3. A party may, upon the evidence of his antagonist alone, assuming that evidence to be true, and every fact which it conduces to prove, move a peremptory instruction, which the court may give, (2 *Marshall*, 424,) but not upon his own evidence alone, or on his own evidence and that of his antagonist, unless his own evidence consists of record or uncontested official documents or writings.

struction : "It cannot be prudent thus to control the jury as to such facts as fraud and sinister influence in the procurement of a will. But, whether there was any evidence of either of these facts in this case, was a question which the court had a right to decide; and we are of opinion that there was no evidence which could have authorized a rational and unprejudiced jury even to suspect that the will had been procured by any unlawful or improper influence. Consequently the instruction should not be deemed prejudicial, even though it had not been technically proper or most prudent." The circuit court certainly had a right, as laid down in this case of *Rogers vs. Rogers*, to decide whether there was *any* evidence of either fraud or improper influence, and if there were no evidence of either of these facts, so to tell the jury positively ; and we coincide with the court in that case, that a verdict ought not to be disturbed, which was founded upon a peremptory instruction, where there was *no* evidence which could have authorized a rational and unprejudiced jury even to suspect particular facts, the existence of which might authorize a different conclusion from that contained in a peremptory instruction. But, in the present case, we are not prepared to say that there was *no* testimony which could have authorized a rational and unprejudiced jury to suspect that the instrument purporting to be the last will and testament of David Thompson was not his true last will and testament; especially as there had been one "hung jury" in the case, composed, as we suppose, of rational men, and perhaps of unprejudiced men. It is true that, taking the testimony on both sides to be from witnesses of equal general character and credit, and comparing the testimony, it certainly preponderates greatly in favor of the will. But the very idea contained in the word "preponderate," in this connection, shows that there was testimony on both sides admitting of investigation and comparison by rational men, and

hence, that a peremptory instruction was unauthorized.

It appears, in the current history of the country, that a strange prejudice exists in the minds of some against last wills and testaments, unless they make what, in their opinion, is an equal distribution of the testator's property among his children. This sentiment or prejudice is at war with the right which every rational man has, according to our law, to dispose of his property by will to whom he pleases. And, it may be, that the circuit court apprehended the influence of some such sentiment as this in the present case, which induced him to fear another "hung jury." However this may be, we think the instruction was unauthorized by the testimony in the cause, and that, however it may have preponderated in favor of the will, the common course, and beaten track, should have been pursued, of allowing the jury, unfettered by a positive instruction, to have investigated and compared the testimony.

Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.