## Campbell v. Mobile & Ohio Railroad Company.

### Campbell v. Same.

(Decided June 20, 1913).

### Appeals from Hickman Circuit Court.

1. Railroads—Action for Killing of Live Stock at a Crossing—Presumption of Negligence.—In an action against a railroad company for the killing of live stock at a grade crossing, the burden being upon the company to overcome the presumption of negligence, and it having failed to show a compliance with section 786 of the Kentucky Statutes, that presumption was not overcome.

2. Railroads—Negligence Imputed by Section 809 Ky. Stats.—Signals.—On the question of whether a railroad has relieved itself of the negligence imputed to it by section 809, Ky. Stats., where cattle are killed at a highway grade crossing, until it has shown that it gave the necessary signals as provided in section 786, there has been put one opinion by this court, and it seems to assume that where the company sought to overcome the prima facie case against it, that it must show that the signals for the crossing were given as required by the section. (See 22 R., 666).

3. Railroads—Signals at Crossings—Section 786 Ky. Stats.—There is nothing in the language of section 786 of the Kentucky Statutes from which it might be inferred that its requirements were intended only for the protection of human beings; it is sufficiently broad to hold the company negligent for a failure to observe its provisions whether men or stock may be killed or injured at a grade crossing if its provisions are violated.

BENNETT, ROBBINS & THOMAS for appellant.

E. T. BULLOCK for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

On the morning of September 16, 1911, about 3:20 a. m., appellee's South-bound fast train running at the rate of fifty-five miles an hour killed two horses at a grade crossing in Hickman county.

One of the horses belonged to appellant, R. L. Campbell, and the other to Mrs. Jennie Campbell. The two actions by agreement were heard together in the lower court, and will be heard together here.

The court after the introduction of all the evidence gave a peremptory instruction to find for the defendant, and the plaintiffs appeal.

The court placed the burden of proof on the defendant, and it introduced the engineer and fireman in charge of the train, who were the only eye witnesses to the occurrence. They stated in substance, that the train was a little late and was running about fifty-five miles an hour; that the crossing in question is on a curve, and North of the crossing and in this curve is a cut; that upon the occasion in question, the fireman was on the East side of the cab, which was the outside of the curve, and the engineer was on the West side; that in the dirt road just East of the railroad crossing was a depression, and that by reason of the cut in the curve and the depression in the dirt road, stock approaching the crossing from the East on the dirt road could not be seen for a very great distance. The fireman stated that he was looking out and when from 60 to 100 feet from the crossing, for the first time, he saw several horses rapidly running on the dirt road toward the crossing from the East, and immediately notified the engineer, but that before anything could be done, and almost simultaneously with such notification the engine and horses met on the crossing; that between the time he notified the engineer and the collision, there was no time to give the stock signal. They state they did not give the stock signal or put on the brakes after discovering the stock because there was no time to do so. The train was equipped with an electric headlight, and modern air-brakes which were in perfect order. Neither of them stated whether or not the signal for the crossing was given as required by section 786 of the Kentucky Statutes.

The evidence of the plaintiffs was given by witnesses who were not present at the time of the injury, and who were not at the place of the injury for several hours thereafter; but they undertake to state such facts locating the bodies of the two horses, the places where blood was seen, and other signs indicating the point where the horses were struck and that certain tracks were seen on the West side of the railroad indicating that some horses had approached from that side and that no tracks were then discernible approaching the crossing from the East side; and from these circumstances it is argued that the physical facts disclose a state of case which justified a submission to the jury of the question of negligence. The evidence further shows that each of the horses were struck on the rump by the engine and thrown to the West side of the track; this fact, if it shows anything, is an indication that the horses were going from East to West as testified to by the fireman and engineer, and were almost across the track when struck; if they had been struck on the rump while going from West to East, it seems that they would have been knocked off on the East side of the track.

The engineer and fireman are unimpeached, their testimony is clear, explicit and easily understood and they fully agree about it. From our understanding of the physical facts and the location of the ground, they furnish no sufficient ground for submission of the question of negligence to the jury in the face of the testimony of the engineer and fireman, if there was no negligence before the train men discovered the horses.

Section 809 of the Kentucky Statutes provides, among other things:

"And the killing or injury of cattle by the engine or cars of any company shall be *prima facie* evidence of negligence and carelessness on the part of the company, its agents and servants."

Section 786 of the Kentucky Statutes is as follows:

"Every company shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such bell shall be rung, or whistle sounded, outside of incorporated cities and towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing, at which a sign-board is required to be maintained, and such bell shall be rung or whistle sounded contin-

uously or alternately until the engine has reached such highway crossing.''

The question is, has a railroad company relieved itself of the negligence imputed to it by section 809 where cattle are killed by its engine or cars at a highway grade crossing, until it has shown that it gave the signals for the crossing as provided in section 786? On this question there has been but one opinion by this court, which we have found, and that a very short one which does not give the facts of that case; but it seems to assume that where the company sought to overcome the *prima facie* case against it, that it must show that the signals for the crossing were given as required by the section quoted. (Mobile & Ohio R. R. Co. v. Roper, 22 R., 666).

Whether the signals required by section 786 are alone for the benefit of persons about to cross the track on highways, or whether they are also intended to warn or frighten animals unaccompanied by persons, has not so far as we are aware been determined by this court, except in the case referred to. Elliott on Railroads, Vol. 3, Section 1206, takes this view of it, to-wit:

''In nearly all, if not quite all, of the states statutes are in force requiring railway companies at certain distances from crossings to sound the whistle of the locomotive and to ring the bell. The obvious purpose of such signals is to give notice of the approach of trains. Such signals, it seems, are not required alone for the benefit of persons about to cross the track but are also required to warn and frighten animals away from the track. Where animals are injured on the track of a railway company proof of the omission to give statutory signals may be evidence of negligence. The failure to give such signals is not actionable negligence per se, but there are authorities which hold that proof of an injury to the animal and proof of a failure to give statutory signals make a *prima facie* case for the plaintiff.''

The case of Hohl v. Chicago, Milwaukee & St. Paul Ry. Co., 61 Minn., 321 (52 American State Reports, 598) was where a colt was killed at a highway crossing at night, and the question we are here dealing with arose in that case and the court said:

''It was the duty of the engineer in charge of the locomotive in this case to give the signals at the crossing or cause them to be given. A failure to do so is a misdemeanor; Gen. Stats., 1894, sec. 6637. It is not the province of the court to ingraft upon this statute any limita-

tions not necessarily implied from the language used, and in as much as the giving of such signals has a tendency in some cases to frighten animals from the railway track, we must presume that this was one of the results intended to be secured by the enactment of the law; hence an omission to comply with the statute in this case was evidence of negligence on the part of the defendant, but whether such omission was the cause of the accident or not was a question for the jury. Palmer v. St. Paul, etc. R. R. Co., 38 Minn., 415.''

In Missouri they have a statute very similar to our own requiring the giving of signals upon the approach of trains to highway crossings, and in the case of Owens v. Hannibal & St. Joseph R. R. Co., 58 Mo., 386, it was held that that statute was intended for the protection of stock as well as for persons.

There is nothing in the language of section 786 from which it might be inferred that its requirements were intended only for the protection of human beings; it is sufficiently broad to hold the company negligent for a failure to observe its provisions whether men or stock may be killed or injured at a grade crossing if its provisions are violated.

The burden being on the company to overcome the presumption of negligence, and it having failed to show a compliance with the provisions of section 786, that presumption was not overcome.

The judgment is reversed for a new trial, and for further proceedings consistent herewith.