## Chesapeake & Ohio Railway Company v. Burton.

(Decided January 9, 1914).

### Appeal from Carter Circuit Court.

1. Live Stock—Killing of by Railroad—Presumption of Negligence—Rebuttal of Presumption.—Under Section 809, Kentucky Statutes, the killing or injuring of stock by a railroad train is presumed to have been caused by the negligence of those in- charge of the train; and the burden of proving that such was not the case rests upon the railroad company. It may, however, relieve itself of that presumption by showing, by competent evidence, that its servants in charge of the train used ordinary care to avoid the killing or injuring of the stock.

2. Live Stock—Killing by Railroad—Conflicting Evidence—Question for Jury.—When, notwithstanding the testimony of those in charge of the train that ordinary care was used by them to avoid killing or injuring the stock, other witnesses testify that they were negligent, it becomes the duty of the trial court to permit the jury to pass upon the question of negligence or no negligence from all the evidence; and in such case the finding of the jury, if reached under proper instructions, will not be disturbed.

W. L. WOODS, WILHOIT AND WILHOIT and SHELBY & SHELBY for appellant.

H. R. DYSARD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment entered upon a verdict awarding the appellee, G. W. Burton, $300 damages for the death of a mare alleged to have been killed by the negligence of the servants of the appellant in charge of one of its passenger trains.

A reversal of the judgment is asked by appellant upon the grounds, first, that the trial court erred in refusing to peremptorily instruct the jury to find for it at the conclusion of the evidence; second, that the verdict is flagrantly against the evidence. It is admitted by appellant that the mare was killed by its train, but denied that her death was caused by the negligence of its servants in charge thereof. According to the evidence, the mare was overtaken and struck by the train on a fill at the end of a bridge spanning Williams Creek. This fill is from 80 to 100 yards long and is crossed by a county road at the distance of about 100 feet from the bridge. The height of the fill near where it is crossed by the county road is ten feet and gradually increases until it attains a height of twenty feet at the bridge. For some distance before reaching the bridge its sides are almost perpendicular, and from the crossing to the bridge, there is a space between the end of the railroad ties and the edge or bank of the fill of only two feet in width, and this space on the south side of the track contains a beaten path. Appellee's residence is situated near where the county road crosses the railroad. The mare owned by appellee had been running at large upon his premises and by some means passed through the gate which enclosed same and went upon the county road, where she was standing at the crossing when appellant's train came in sight. As the train came on the mare becoming frightened ran down the path of the fill in the direction of the bridge, and upon reaching the bridge was overtaken by the train and, though still in the path by the side of the track, was struck by the train, knocked from the fill and instantly killed.

The evidence introduced in behalf of appellee shows that the mare ran a distance of 75 or 80 yards before she was struck by the train; also that the engineer and fireman upon the train, by keeping a lookout in approaching the crossing, could readily have seen stock or any similar object on the crossing and track or fill for a distance of four or five hundred yards therefrom; that the

train neither sounded its whistle nor rang its bell for the crossing nor after it came in view of the mare, before she ran in the direction of the bridge; and that there was nothing to prevent the engineer and fireman from seeing the fright of the mare or her flight on the fill toward the bridge, several hundred yards before the train reached and struck her; and that the train was going at a speed of 35 or 40 miles an hour and did not at any time sound the stock alarm. According to some of the witnesses, when within 75 or 100 yards of the mare there seemed to have been a shutting off of the steam or application of the air brakes, which momentarily lessened the speed of the train, but immediately thereafter the steam was applied or the air brakes taken off and the speed of the train again increased before its collision with the mare occurred. Considered as a whole, the evidence introduced in behalf of appellee, much of which was furnished by the testimony of eye-witnesses to the accident, conduced to prove that appellant's servants in charge of the train might have stopped it before reaching the fill or so slackened its speed as to have prevented the death of the appellee's mare.

The only witness introduced by appellant was H. S. Meddis, the engineer in charge of the train by which the mare was killed. Meddis testified that the mare, when first seen by him, was only 50 yards from the train, which was running at a speed of 35 or 40 miles an hour; that the mare was then standing on the fill near the county road, apparently about ten feet from the railroad track, and at once began to run in the direction of the bridge, which she reached before being overtaken and struck by the train; that seeing her at what he thought a sufficient distance from the railroad track to enable the train to pass without striking her, he did not anticipate her collision with the train and did not with the whistle give the stock alarm, fearing it would frighten and cause her to run on the track in front of the train. The witness frankly admitted that at no time did he give the stock alarm and he failed to state whether the train whistle was sounded for the public road crossing or that he or the fireman were maintaining a lookout ahead of the train in approaching the crossing. He did testify, however, that at no time after he discovered the presence of the mare on the fill would it have been possible to have stopped the train before it struck her. As according to all the evidence the mare was never on the railroad track,

but remained on the path of the fill until struck by the train, and the space between the track and edge of the fill was nowhere more than two feet in width, Meddis was evidently mistaken in stating that when first seen by him the mare was ten feet from the track.

It will thus be seen that appellee's witnesses were uncontradicted as to the facts that the train whistle was not sounded for the public road crossing; that there was nothing to prevent the engineer or fireman from seeing the mare on the fill for a distance of from 300 to 500 yards before the train reached the crossing, if they or either of them had been maintaining a lookout; that the whistle did not sound the stock alarm, and that there was no attempt on the part of appellant's servants in charge of the train to stop it after it reached the point from which the mare could be seen by the engineer and fireman and before it struck and killed her.

The jury were properly permitted to determine from these facts whether the death of appellee's mare was caused by the negligence of appellant's servants in charge of the train, and as their verdict must have been based upon the theory that the death of the mare was caused by the failure of appellant's servants to sound the train whistle for the public crossing, or maintain a lookout in approaching the crossing; in failing to stop the train to prevent its striking the mare, or failing to give the stock alarm after she began running toward the bridge, which, if done, might have so frightened her as to cause her to leap from the fill before the train reached her, it is patent that it cannot be said there was no evidence to support it.

It is not to be overlooked that, under the statute, (Sec. 809 Ky. Stat.), the killing or injuring of stock by a railroad train is presumed to have been caused by the negligence of those in charge of the train, and the burden of showing that such was not the case rests upon the Railroad Company. It may, however, relieve itself of that presumption by showing by competent evidence that its servants used ordinary care to avoid the killing or injuring of the stock complained of; but when, notwithstanding the testimony of those in charge of the train that such care was used, other witnesses testify that they were negligent, it becomes the duty of the jury to pass upon the question at issue from all the evidence. L. & N. R. R. Co. v. Rhodes, 28 Rep., 692.

In Campbell v. Mobile & Ohio R. R. Co., 154 Ky., 582, we held that where stock were killed by a railroad train at a public crossing, the negligence imputed to the railroad company by section 809 *supra* is not removed until it is shown that the train in approaching the crossing gave the signals required by section 786 Ky. Stat., which are intended for the protection of stock as well as human beings. If appellee had introduced no evidence as to the killing of his mare by appellant's train, it might well be doubted whether the testimony of the latter's engineer, Meddis, relieved it of the negligence imputed to it by the statute, but when we come to consider that of appellee's witnesses, conducing as it does to affirmatively show the negligence of appellant's servants complained of in the petition, no ground is left for saying that the verdict of the jury is flagrantly against the evidence; and if correct in this conclusion, it necessarily follows that the refusal by the trial court of the peremptory instruction asked by appellant was not error.

It is insisted for appellant that, in view of its having the burden of proof as to the question of negligence, the trial court erred in permitting appellee to introduce some of its evidence before that of appellant was introduced. Notwithstanding the admitted killing of appellee's mare by appellant's train and the statutory presumption of negligence arising therefrom, it was necessary for appellee to introduce evidence as to the value of the mare before that of appellant was introduced; and, though he in addition, introduced some of his evidence tending to prove that her death was caused by the negligence of appellant's servants which more properly should have been introduced after that of appellant, we do not find in the record that the evidence thus introduced by appellee was for that reason objected to by appellant, in view of which such objection will not be heard on appeal. Appellant's rights were in no way prejudiced in this matter.

It is not complained that the verdict is excessive. The evidence as to the value of the mare was all to the effect that her fair market value at the time of her death was $300.00 to $350.00. The instruction fairly submitted to the jury the issues of fact involved and properly advised them of the law applicable thereto.

Judgment affirmed. Judge Hannah not sitting.