# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## Reliance Coal and Coke Company v. Louisville & Nashville Railroad Company.

(Decided May 2, 1924.)

### Appeal from Perry Circuit Court.

1. Pleading—Demurrer Waived by Not Having Court Rule.—Demurrer to petition was waived by defendant not having the court act on it.

2. Railroads—Killing of Animal Must be by Collision to Raise Prima Facie Case of Negligence.—Killing of stock on railroad track must be shown to be the result of actual collision before a prima facie presumption of negligence of railroad arises under Ky. Stats., section 809, but collision may be proved by circumstances.

3. Railroads—Evidence as to Negligence in Killing Horse Insufficient to go to Jury.—In an action for value of horse killed, evidence as to negligence held insufficient to go to the jury, notwithstanding contention that Ky. Stats., section 809, raised a prima facie presumption of negligence.

4. New Trial—Properly Denied on Ground of Newly Discovered Evidence.—The court did not err in denying a new trial for newly discovered evidence of a man whose wife was the stenographer in the case, and testified as a witness, where affidavit was made by defendant's counsel alone, and none was filed by any agent or officer of the corporate plaintiff.

5. New Trial—Counsel should Offer to Introduce Evidence Discovered Before Verdict Returned.—If discovery of evidence was made before verdict was returned, it was party's duty to offer to introduce it and get the benefit of it, and, having failed to do

so, such party is not entitled to a new trial on the ground of newly discovered evidence.

MILLER & CRAFT and J. W. CRAFT for appellant.

WOODWARD & WARFIELD, JESSE MORGAN and JOHN MAR-SHALL, Jr., for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, Reliance Coal· and Coke Company, sought by this action to recover of the appellee and defendant below, Louisville and Nashville Railroad Company, damages for the alleged negligent killing of a horse owned by plaintiff and which it valued in its petition at $500.00. The negligence charged in the petition was in the alternative in that it was averred that defendant's agents and servants operating the train wantonly, carelessly and negligently ran and chased the horse when it was in plain view and but a short distance ahead of the engine without reducing the speed or taking other precautions to prevent injuring him and thereby caused him to fall into a ditch resulting in his death, or that they ran the engine against, over and on the horse thereby producing his death; but there was no averment that one of the allegations was true but which one the plaintiff did not know. A demurrer was filed to the petition, but it was not pressed and the court did not pass on it, and if we should concede (a question not now decided) that the filing of the demurrer was the proper practice to test the incorrect pleading arising from the omitted but required allegation, it was waived by defendant not having the court to act on the demurrer, under a well known rule of practice frequently announced and followed by this court. The answer was a denial, and at the close of the evidence the court sustained defendant's motion for a peremptory instruction in its favor, resulting in a verdict for it, followed by a judgment dismissing the petition, from which plaintiff prosecutes this appeal.

For a reversal it is first argued that, under the provisions of section 809 of our statutes, a *prima facie* presumption of negligence on the part of the defendant arises when plaintiff proves by his testimony that the death or injury to the stock was brought about by the acts of defendant's agents and servants without regard to whether there was or not a collision. But, we think the adjudged

cases in this court involving actions under the statute are to the effect that no such presumption arises except where the death or injury was produced by a collision with the stock, but the collision may be proved by circumstances, as well as by the testimony of eye-witnesses; and when the proven circumstances are such as to create the reasonable inference that the engine or some of the equipment of the train collided with the stock, or if it is so shown by direct testimony, the burden is then cast upon the defendant to relieve itself from the presumed negligence. Some of the cases from this court so construing the statute are: Southern Railway Co. v. Forsythe, 23 Ky. L. R. 942, and Pickett v. Lexington and Eastern Ry. Co., 153 Ky. 461. The direct point was also before the Superior Court and so decided in the cases of Kentucky Central Ry. Co. v. Marsh, 7 Ky. L. R. 761, and Kentucky Central Railroad Co. v. Threlkeld, 8 Ky. L. R. 787. Indeed the express terms of the statute would seem to admit of no other interpretation. It says: "and the killing or injury of cattle *by the engine or cars* of any company shall be *prima facie* evidence of negligence and carelessness on the part of the company, its agents and servants." (Our italics.) The presumption is indulged to prove negligence and not the fact of injury. There are other means by which stock may be killed or injured by the negligence of a railroad company than by actual collision with them, and for which the company may be made to respond in damages to the owner of the stock. Since, however, the servants in charge of the train are in a better position to know the facts relating to the collision, the legislature, in furtherance of its declared public policy, deemed it wise to require an explanation by them, after the plaintiff had shown by his evidence that the death or injury occurred in that manner, and the very language of the statute is so restricted. Cases may be found containing the general statement, in substance, that after plaintiff shows that defendant produced the death of or injury to the stock, the burden is then cast upon it to disprove negligence, but in each and all of them it will be found that the damage was produced by an actual collision. The first question to be determined, therefore, is whether the proof was sufficient to establish the fact of a collision, either by direct testimony, or by physical circumstances from which it might be inferred.

But two witnesses introduced by plaintiff testified as to the facts relating to the injury, its paymaster, Mr. Bird, and Mrs. Ould. The former stated that between 7:00 and 7:30 p. m. on September 2, 1917, he was riding the horse from Hazard over a dirt road paralleling the railroad track and at a point where the dirt road was some twelve or fifteen feet above the railroad track, when he discovered a train approaching from the rear. The horse became nervous and frightened, so much so that it became evident to the rider that he was about to go over the embankment on to the railroad track, and to avoid participating in the hazard, the witness dismounted and the horse leaped or fell over the embankment and witness heard him running apparently in the same direction the train was moving, and he thought that at that time it was something in the neighborhood of fifty yards behind. It was traveling at a moderate speed, not exceeding between fifteen and eighteen miles per hour, and something like three miles beyond that point witness found the horse in what he described as a ditch, but which is shown to have been a natural drain about fifteen feet wide, and eight or nine feet deep, with a bruise upon his back and some injuries on his feet, which the witness thought had been produced by his running over some cattle guards. The place was, according to the witness, betwen 25 and 30 feet from the track, and it was not shown that it was on the railroad right of way, though we assume it was. The other witness introduced by plaintiff saw the horse in the ditch or creek with the bruised place on its back, from which some blood had flowed, but neither witness testified to any horse tracks on, or even by the side of, the railroad track between the point where the rider dismounted and where the horse was found; nor did any other witness testify to any such facts. Neither was there any proof of any blood or hair or other physical fact indicating that the horse received his injuries as the result of any collision or any accident that may have occurred on the *railroad track*. No trestle or cattle guard (and there were some between those points) was examined for the purpose of showing whether the horse had gone over them, and the same is true, as we have stated, with reference to the track itself. The topography of the territory was more or less rough, though it would appear that the horse could have travelled at the side of the track

next to the river which it paralleled, and there were places it could entirely disappear.

Defendant introduced its engineer and acting fireman on that occasion, and they testified, in substance, that they did not see the horse at all until they arrived at a curve but a short distance from the spot where his body was found, and he was then off the track and some seventy-five or hundred yards ahead of the engine when the stock alarm was blown and the steam shut off and the speed of the train reduced to some eight or nine miles per hour. The witnesses could not tell whether it was a horse or a mule, and at another point just beyond where he was first seen by them he again appeared some distance ahead at the side of the track and immediately disappeared and they saw him no more. Each of them testified positively that there was no collision with him. We, therefore, have a case where the animal was proven to have jumped or fallen on the track and was afterwards found with a bruise on his back some three miles distant therefrom with no evidence to show that at any time he was either on the track or near enough thereto to be seen by the operators of the train until a short while before he fell into the ditch, after which he disappeared and so far as the evidence shows he was never on the track or sufficiently near thereto to be struck by the train, nor did those in charge of it see him thereafter, and with no testimony to prove that he was willfully or otherwise run into the ditch by them. We think under such circumstances the trial court, following numerous opinions of this court, could not have done otherwise than to give the peremptory instruction complained of. Illinois Central Railway Co. v. Gholson, 23 Ky. L. R. 2303; Ky. Central Railroad Co. v. Talbot, 78 Ky. 621; McGhee, Receiver, etc. v. Guyn, 98 Ky. 209; Crawford v. Southern Ry. in Ky. 150 Ky. 741, and Louisville and Nashville R. R. Co. v. Hanger, 167 Ky. 493. The facts in the cases of L. & N. R. R. Co. v. Kice, 22 Ky. L. R. 1463; C. & O. Ry. Co. v. Burton, 156 Ky. 736; C. N. O. & T. P. Ry. Co. v. Graves, 165 Ky. 148, and others relied on by appellant, as well as those in the case of Hines v. Kough, 189 Ky. 806, were entirely different from those presented by this record in that there were proven physical circumstances from which the jury could readily conclude that the damage to the stock was produced by a collision with some part of the train, and when that is true the court should submit the case to the jury

by appropriate instructions and not direct its verdict by a peremptory instruction based on the testimony of defendant's witnesses disproving negligence.

But, it is insisted that in as much as the statute raises a presumption of negligence, that issue should be submitted to the jury regardless of the quantity or quality of defendant's testimony in rebuttal thereof, upon the theory that it is the exclusive function of the jury to determine when that presumption is overcome. However, this court has held to the contrary, as is shown in some of the cases, *supra,* and also in C. & O. Ry. Co. v. Grigsby, 131 Ky. 363; Remley v. I. C. R. R. Co., 151 Ky. 796; Campbell v. Mobile & Ohio Ry. Co., 154 Ky. 582, 46 L. R. A. (N. S.) 881, Ann. Cas. 1915B 472. The same practice is inferentially endorsed in the Graves, Burton and other cases relied on by plaintiff, since it was held therein that the defendant's testimony was not sufficient to overcome that of plaintiff, which by implication said that if there were no proven physical facts or circumstances to rebut the positive testimony of defendant's witnesses, a peremptory instruction would have been proper; and in all cases where there were no such circumstantial facts this court has uniformly held that the case should not be submitted to the jury. In this case we do not regard the fact that the horse got upon the track some distance from where it was afterwards found alone sufficient to authorize a submission of the case to the jury, either upon the theory of a collision, or of a wrongful chasing of the horse as a result of which it was killed, without some additional fact having a tendency to prove that those in charge of the train saw him and failed to take the proper steps to prevent injuring him.

But, it is insisted that the new trial should have been granted on the ground of newly discovered evidence, which was alleged to be the testimony of a Mr. Ould, whose wife was the stenographer who reported and transcribed the evidence in this case. She was the second witness introduced by plaintiff and told about seeing the horse in the ditch, to which reference has been made. In her testimony she testified that her husband was present with her, but notwithstanding that fact he was not offered by plaintiff as a witness. Furthermore, the alleged newly discovered witness is shown to have lived in that community at the time of the accident, as well as at the time of the trial, something near five years thereafter; and

surely plaintiff, within that time could have discovered his testimony by the slightest sort of diligence, and especially so when it knew that one of its witnesses was the wife of the alleged newly discovered one. Moreover, the affidavit relating to the newly discovered testimony was made by defendant's counsel alone. There was none filed with reference thereto by any agent or officer of the corporate plaintiff, and in the attorney's affidavit, as well as in that of the discovered witness, it is stated that the testimony was not discovered until "the closing of the case as aforesaid," which was, according to the affidavit of the witness, on the 20th day of April, 1922, upon which day the case was tried. From those affidavits we are not informed whether the discovery was made after the verdict was rendered or between that time and the closing of the testimony. If it was made before the verdict was returned, it was the duty of plaintiff to offer to introduce it and get the benefit of it before the issues were submitted to and passed upon by the jury. For the reasons stated it is clearly manifest that plaintiff can not rely on the alleged newly discovered testimony.

Wherefore, finding no error in the judgment, it is accordingly affirmed.