## Chesapeake & Ohio Railway Company v. Cooper.

(Decided January 27, 1916.)

### Appeal from Greenup Circuit Court.

1. Master and Servant—Pleading—General Averment of Negligence —Specifying Negligence.—In suits to recover damages for personal injury, the pleader has the right to set out in his petition and in an amended petition as many separate grounds of negligence as he desires to rely on, and if the evidence sustains any one of them, may recover, although there may be a failure of proof as to the others. He may also set out the negligence complained of in general terms, but if he specifies in what the negligence consists, he is bound by his specifications and cannot introduce evidence supporting other elements of negligence independent of those specified.

2. Pleading—Specification of Negligence—Proof of Other Negligence Not Prejudicial—When.—Where the plaintiff in his petition set out in a general way the negligence relied on, and in an amended petition stated his grounds of negligence specifically, and in a second amended petition, for the purpose of making his petition more specific, set up yet another ground of negligence, to sustain which no proof was offered, it being apparent that the defendant was not prejudiced or mislead as to the real cause of action by averments in the second amended petition, the rule, that an error that does not affect the substantial rights of the complaining party will be disregarded, will be applied.

3. Master and Servant—Employers' Liability Act—Contributory Negligence—Instruction.—Although an instruction on the subject of contributory negligence was imperfectly drawn, this was not prejudicial error, as there was no evidence of contributory neglect.

4. Negligence—Federal Employers' Liability Act—Contributory Negligence—Instruction on.—In a suit under the Employers' Liability Act, when contributory negligence is pleaded and there is any evidence in support of this defense, a proper instruction on this subject should be submitted.

5. Master and Servant—Employers' Liability Act—Contributory Negligence—Instruction.—Although in a suit under the Federal

Employers' Liability Act contributory negligence is pleaded, the jury should not be instructed on this subject unless there is some evidence tending to show that the plaintiff was guilty of contributory negligence. There must be pleading as well as evidence. In the absence of either, there should be no instruction.

6. Appeal and Error—Error Must be Substantial to Authorize Reversal.—Under sections 134 and 756 of the Civil Code, a judgment cannot be reversed for any error that does not affect the substantial rights of the adverse party.

PROCTOR K. MALIN and WORTHINGTON, COCHRAN & BROWNING for appellant.

ALLEN D. COLE, W. T. COLE and D. E. ERNST for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In a suit under the Federal Employers' Liability Act, to recover damages for personal injuries sustained, the appellee, Cooper, had a judgment against the appellant company for eight thousand dollars. A reversal is asked on the ground that there was no evidence offered in behalf of appellee to sustain the averments of the pleading stating the acts of negligence on which he went to trial, and therefore the motion for a peremptory instruction should have been sustained. Another ground relied on is error in the instruction on contributory negligence.

In the petition the averment was that the plaintiff was injured "by the negligent manner in which the defendant's employes having then control of the engines, cars and signals at said point conducted themselves in the management of said cars, engines and signals, and was also caused by the negligence of defendant's officers, servants and employes, and was also caused by defects in defendant's ways, works, machinery, appliances, plant, cars, engines tracks roadbed and signals at said place and by the defendant's neglect in failing to formulate, promulgate and enforce proper rules and regulations for the safety of this plaintiff and his co-employes, in that defendant conducted its work by unsafe and dangerous methods, and did have an improper signal system, and conducted its work by insufficient signals, material and men."

In an amended petition filed before the answer, the averment was that the appellee "was directed by defendant, its agents and servants, to go upon a loaded

freight car and ride thereon in charge thereof over what is known in defendant's said switch yards as the 'hump;' that while he was so upon said loaded freight car the platform thereof gave way and fell down, whereby he was violently thrown to the ground and whereby the contents of said car fell upon him.     *     *     *

"That the defendant, its agents and servants, carelessly and negligently failed to furnish him a reasonably safe place wherein to work and reasonably safe appliances with which to work.

"That the said car which he was directed to ride and was riding in the discharge of his duties was defective, insecure and dangerous for the purpose of carrying its said load of freight and plaintiff therein; and that said car was carelessly and negligently overloaded by defendant, its agents and servants.

"That defendant, its agents and servants, carelessly and negligently failed to inspect said car and its mechanism and appliances and to keep same in reasonably safe condition for use, and also carelessly and negligently failed to warn or instruct plaintiff as to the dangerous and defective condition of said car and its mechanism and appliances and to keep same in reasonably safe condition for use, and also carelessly and negligently failed to warn or instruct plaintiff as to the dangerous and defective condition of said car and its mechanism. *     *     *"

In a second amended petition it was set out that "for the purpose of making his petition more specific, the plaintiff states that on the occasion of his said injury, the defendant, its agents and servants, carelessly and negligently cut loose a freight car and likewise suffered and permitted the same to run down the hump or incline shortly following the said car on which plaintiff was riding, and without having any one thereon to control said car, when they knew, or by the exercise of ordinary care could have known, of plaintiff's peril in time to have prevented same, whereby it struck the car on which plaintiff was riding with great force and violence, by reason whereof plaintiff was precipitated through the bottom of said car as aforsaid, whereby the flanges and other parts of said car ran through his left leg as aforesaid, to his great damage, as stated in the petition."

To the petition an answer was filed traversing generally the averments, and in a separate paragraph the

contributory negligence of the plaintiff was relied on to defeat a recovery. After this an answer was filed traversing generally the averments of the two amended petitions and pleading that plaintiff assumed the risk of the accident that happened.

There is really no material issue made in the evidence. It shows, stating it briefly, that the appellee was a switchman in the Russell yards of the company; that in this yard there was what is commonly known among railroad men as a "hump track." This "hump track" is a track that is raised in the center, and from this raised part the track on each side runs down and connects with the various yard tracks. The custom was when a train came into the yard with cars to be placed in other trains, to back up the incline and on the top of the hump, and the cars which were then cut off, ran down the other side of the hump, one at a time, and thence, of their own momentum, ran into the various switches leading off from the hump track.

It was also the custom in this yard for a switchman to be upon each car in order to control its movements and to stop it when it had reached the desired point upon any switch; but whenever two or more cars following each other were to be placed on the same switch track, one switchman on the front car controlled the movements of the following cars. Immediately prior to the accident appellee started over the hump on a loaded coal car that had doors in the bottom through which the coal was emptied. Another car was cut off behind him at a distance of probably two hundred feet, and was allowed to coast down the hump following the car upon which appellee was riding. Both cars were to be placed on the same switch track, and appellee was therefore to control the movements of both. As the front car neared the foot of the hump, its speed was slowed down to something like three or four miles an hour, and as the following car came close to it, the appellee, who was riding on the rear end of the front car, in order that he might apply the brake, discovered that the car following was coming at a faster rate of speed than usual, and fearing that he might be injured, if he remained where he was standing, and when the rear car collided with the car he was on, he climbed up on top of the coal on his car to await the automatic coupling of the two cars. When the rear car that was coming at a speed of about ten

or fifteen miles an hour, bumped into the front car, with more than ordinary violence, the effect of the collision was to loosen or unfasten the appliances that held the two doors in the bottom of the car on which appellee was riding even with the floor of the car. When these appliances were so unfastened, the doors in the bottom of the car fell down and the coal on which the appellee was riding ran out of the bottom of the car, carrying him with it. Appellee was nearly smothered by the big load of slack coal in the car that fell on and around him when the doors dropped out and the coal on which he was standing fell to the track, and in addition sustained injuries that necessitated the amputation of one of his legs.

In the evidence for appellee it was shown that the brake on the car on which he was riding was so defective as that it could not be applied, and that the appliances by which the doors at the bottom of the car were held up even with the floor were in such a defective condition that the collision caused the machinery holding up these doors to become loosened or unfastened, letting the doors fall down.

It is admitted that the appliances by which these doors were held up were in a defective condition, and there is very little dispute, if any, about the fact that the brake was also defective. But there was no evidence offered in support of the second amended petition that the company negligently turned loose the second car without having any one on it to control its movements, or to support the averment in this pleading that the company knew or by the exercise of ordinary care could have known of the peril of appellee in time to have prevented the injury. So that when the trial court came to instruct the jury he submitted to them only the questions whether the brake and machinery that held up the doors in the bottom of the car were defective and in an unsafe condition.

With the pleadings and evidence in this condition, it is the argument of counsel for the company that the trial court should have directed a verdict in its favor because when the appellee filed his second amended petition, "for the purpose of making his petition more specific," he abandoned the acts of negligence set up in the petition, as well as the first amended petition, and was

.therefore confined to the acts of negligence set up in the second amended petition, and there being, as stated, no evidence to support this pleading, the company was entitled to a verdict.

Just why this second amended petition was filed is not disclosed, as no evidence was offered in support of it. We do not, however, think that in this second amended petition the appellee intended to or did abandon the grounds of negligence set up in his first amended petition and on which the case went to the jury. Except for the fact that the second amended petition averred that it was "for the purpose of making his petition more specific," there could be no criticism of this pleading, for it merely stated an additional ground of negligence; and the plaintiff in suits like this has a right to set out in his petition and in amended petitions as many separate grounds of negligence as he desires to rely on, and if the evidence sustains any one of them, may recover, although there may be a failure of proof as to the other.

He may also set out in general terms the negligence relied on, but we have written in a number of cases that when the pleader specifies in what the negligence consists, he is bound by his specifications and cannot introduce evidence supporting other elements of negligence independent of those thus particularly relied on. Gaines & Co. v. Johnson, 133 Ky., 507; Lexington Ry. Co. v. Britton, 130 Ky., 676; Burch v. Louisville Car Wheel & Ry. Supply Co., 146 Ky., 272; Palmer's Admx. v. Empire Coal Co., 162 Ky., 130.

We do not, however, attribute to the words "for the purpose of making his petition more specific" the importance or limiting effect ascribed to them by counsel for the railroad company. In the first place, they refer specifically to the petition, which· in a very loose and general way charged all sorts of negligence and did not in terms refer to the acts of negligence set up in the first amended petition, and which set out the real acts of negligence on which the appellee relied; and to give these entirely superfluous words the limiting influence attributed by counsel would be extremely technical. In the second place it is perfectly apparent that the company was not in any manner prejudiced or in any way misled as to the real cause of action by the averments of this second amended petition. Under these circumstances we readily apply the rule that an error that does

not affect the substantial rights of the complaining party will not be available on appeal as a ground of reversal.

The other error relied on is that the instruction on the subject of contributory negligence was erroneous. In several cases, following the ruling of the Supreme Court of the United States, we have condemned as reversible error an instruction like this. These cases are referred to in C., N. O. & T. P. Ry. v. Goode, 163 Ky., 60, in which is set out the instruction that should be given on the subject of contributory negligence. Under the authority of these cases we would reverse this case except for the fact that there is no evidence that the appellee was guilty of any contributory negligence, and, therefore, no instruction on the subject should have been given. If there was no place in the case for an instruction on contributory negligence and no evidence on which to base an instruction on this subject, it is manifest that the giving of an imperfect instruction could not have prejudiced the rights of the company. It is true that the Federal act expressly provides that in cases like this contributory negligence will diminish the damages to which the plaintiff is entitled and therefore in every case in which contributory negligence is pleaded, and there is any evidence in support of this defense, a proper instruction on this subject should be submitted, so that the railroad company may have the benefit of this defense to which under the statute it is entitled. Norfolk Southern R. Co. v. Ferelee, 238 U. S., 269, 59 L. Ed., 1303.

But a very careful examination of the evidence satisfies us that there was no evidence of contributory negligence, although that defense was set up in the answer, and failure to offer any evidence in support of this defense explains why counsel for the company in their brief do not argue that plaintiff was guilty of any contributory negligence. They rest their right to a reversal solely on the point that by the averments of the second amended petition the plaintiff was confined to the acts of negligence set out in that amended petition and to the structural defect in the instruction on contributory negligence.

But notwithstanding the Federal statute and the right thereunder to plead and rely on the defence of contributory negligence, we think it is obvious that when there is no evidence tending to show that the plaintiff was

guilty of contributory negligence, the jury should not be instructed on this subject, although that defense may be set up in a pleading. It is just as essential that there should be proof of contributory negligence as that there should be an allegation relying on this defense. If the contributory negligence it not pleaded, of course an instruction presenting this defense should not be submitted, and so if it is pleaded, but there is no evidence to support the plea, there should be no instruction.

The company had no substantial or meritorious defense. It seeks a reversal purely on the technical grounds we have mentioned, and being convinced that its substantial rights were not prejudiced by the condition of either the pleadings or the instructions, we must, under section 134 of the Civil Code providing that "The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." And section 756, providing that "Nor shall a judgment be reversed or modified, except for an error to the prejudice of the substantial rights of the party complaining thereof," disregard these technical errors.

The judgment is affirmed