CASE 10—ACTION ON CONTRACT FOR SERVICES RENDERED—FEB. 21.

# Curran v. Stein, &c.

| 110  | 99  |
|------|-----|
| f132 | 250 |
| f132 | 258 |

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.   REVERSED.

PEREMPTORY INSTRUCTION—JURY REQUIRED TO RETURN VERDICT OVER THEIR PROTEST—ACTION ON ALLEGED JOINT CONTRACT—VARIANCE.

Held:   1. Where the court gave a peremptory instruction for defendant, it was not error to compel the jury, over the protest of a number of its members, to return a verdict in obedience to the instructions.

2. If the plaintiff makes out his case, however much the evidence for defendant may over-balance that for plaintiff, the court can not give a peremptory instruction for defendant, although of opinion that, if the jury should find a verdict for plaintiff, it should be set aside, and a new trial granted.

3. Under Civil Code Practice, section 131, as amended by the act of 1888, in an action on an alleged joint contract the failure of proof as to some of the defendants does not prevent a judgment for plaintiff against the defendant shown to be bound.

MATT O'DOHERTY FOR APPELLANT.

1. We contend that the trial judge has no power to compel a jury by peremptory instruction to sign a verdict against their conscience and protest.

2. A peremptory instruction should never be given where there is a scintilla of evidence to support the opposing side.

3. In this case the evidence offered by the plaintiff, if true, established his case beyond controversy.

### AUTHORITIES CITED.

Fugate v. City of Somerset, 16 Rep., 807; Lon. v. Howard, 82 Ky., 212; Com. v. Tate, 89 Ky., 587; Eskridge v. R. R. Co., 89 Ky., 367; Buford v. R. R. Co., 82 Ky., 286.

THOS. W. BULLITT AND J. B. McCORMICK, FOR APPELLEE.

The plaintiff alleges that he was employed to do certain work by Stine, Young, Harris, Bullitt, and Grant, at the agreed price of $300, and had only been paid $100, and sues for the balance.

1. Variance between pleading and proof. There is no proof that the appellees entered into the contract alleged in the petition. There is proof tending to show that plaintiff was employed by Lafayette to do the work, and that this employment by Lafay-

ette, was approved by Col. Bullitt who was the counsel for the Louisville Southern Railroad. Appellant must prove the contract alleged before he can recover.

2. Col. Bullitt and Theodore Harris were, at the time the contract is alleged to have been made, counsel and president, respectively, of the Louisville Southern Railroad, and had no authority to make the contract alleged.

3. The Guarantee Committee was not in existence at the time the contract is alleged to have been made, and its members could not be bound by the alleged contract.

4. As the committee was not in existence, Col. Bullitt had no authority to, and could not bind these defendants individually. These facts being established by the testimony beyond all doubt, the whole case, pleadings and evidence, presented only a question of law to be determined by the trial judge; and the peremptory instruction to find for the defendants was, and is proper.

### AUTHORITIES CITED.

Meriwether v. Meriwether, 3 Littell, 419; Newton v. Carson, 7 Ky. Law Rep., 742; Mueller, Admr. v. McAllister, 79 Ky., 315; Clark v. Com., 16 B. M., 207; Com. v. Magowan, 1 Met., 368; Helmerking v. Com., 100 Ky., 74; Am. & Eng. Ency., vol. 28, 49; Wilson v. L. & N. R. R., 83 Ky., 516; Thompson on Trials, vol. 2, p. 1504-1596; Same, secs. 2134, 2135, 2243, 2244, 2247, 2248, 2249 and 2251; Rawlings v. U. S., 4 Cranch (U. S.), 219; Com. v. Clark, 94 U. S., 278.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant filed this action in ordinary against appellees, alleging that they had employed him to investigate and prepare for adjustment a large number of claims growing out of the operation of the Louisville Southern Railroad, amounting in the aggrgate to the sum of $10,480.49; that he had performed the services, and they had agreed to pay him $300 therefor, but had paid him only $100 of the amount. He prayed judgment against them for the balance, $200. The answer was a traverse of the allegations of the petition. On the trial before the jury, appellant introduced proof showing that the Louisville Southern leased its road to the Virginia, East Tennessee & Georgia

Railroad Company July 1, 1890, and then went out of business, except that it kept up an organization for certain purposes referred to in the lease by its president and directors; that when the lease was made appellee, Harris, made a contract with the lessee, by which it turned over to him about $190,000 in bonds, and he agreed to discharge certain liabilities of the Louisville Southern, so that the lessee would get the property free of these claims; that these claims turned out to be larger than they were estimated to be; that in the spring of 1891 the subject of the claims for overcharges, loss, damages, etc., growing out of the operation of the Louisville Southern Railroad above referred to, were discussed by appellee, Harris, and the witness, Lafayette, who had been the general freight agent for the Louisville Southern; that Lafayette thought there was something like $2,000 coming to the Louisville Southern on these claims on a settlement with the connecting roads, and informed Harris that he thought they could be adjusted at a cost of $700 or $800. Harris thought this was too much, and the subject dropped between him and Lafayette. Subsequently Lafayette made an arrangement with appellant, Curran, to adjust the claims for $300. He testifies that he did this by authority of appellee, Bullitt; Harris then being in bad health. Lafayette also states that Bullitt and Harris and the other appellees belonged to what is called the "guaranty committee," and that in employing Curran he acted on behalf of that committee under the instructions given him by Bullitt. It would seem that when Harris' health failed Bullitt took charge of matters for Harris, and went to New York, and made an arrangement by which he secured some more bonds on a new guaranty signed by him and the other appellees for the payment of the claims referred

to. The signers of this paper were afterwards known as
the guaranty committee. Appellant's services extended
over a period of something like two years. He adjusted
the claims, but there was not as much realized from them
as was anticipated. On one of the claims which he ad-
justed he received and retained $100, which he credited
on his account for services. At the conclusion of appel-
lant's testimony, appellees moved the court to instruct
the jury peremptorily to find for them. This motion was
overruled. They then testified, in substance, that none
of them had employed appellant, or authorized his em-
ployment, or agreed to pay him for his services. They
also showed that the guaranty committee was not formed
until May 28, 1891, and that its first meeting was held
about June 20th; that it kept a record of its proceedings,
and that it at no time took any action in regard to ap-
pellant or his services. The proof for appellant in chief
tended to show that the contract was made by Lafayette
with him in April, 1891, or perhaps earlier; but, a letter
in regard to the claims for $10,480.49 having been brought
out, Lafayette in rebuttal testified that his contract with
appellant was made a month or two after that letter
was written. The letter was dated April 3, 1891. On
all the evidence appellees again moved the court to in-
struct the jury peremptorily to find for them. This motion
the court sustained.//As soon as the court had given the
jury the peremptory instruction to find for appellees, a
number of the jurors in their seats severally declined to
sign a verdict for appellees, and thereupon the court or-
dered the jury to retire to the jury room, and said to
them that, if they did not return a verdict as directed, he
would send them somewhere else. The jury retired, and
thereupon appellant moved the court to discharge the

jury from the further consideration of the case. The court overruled the motion. After some time the jury returned into court, and by their foreman reported the following verdict: "In obedience to the peremptory instruction of the court, we, the jury, find for the defendants."

It is insisted for appellant that the court erred in giving the jury a peremptory instruction, or in interfering with the freedom of their deliberation by requiring them to return a verdict which they were unwilling to render. There was no error of the court in requiring the jury to obey his instructions. The peremptory instruction of the court to the jury, like any other order the court may make in the case, must be obeyed. The verdict, though in form the act of the jury, is really the act of the court. The court determines the case. The verdict of the jury is merely a form of putting of record the judgment which the court has given. To hold that the jury may disobey the peremptory direction of the court would be to vest the jury with power to review the decision of the court on the law of the case. In some jurisdictions the practice is for the court to discharge the jury and enter the judgment. The substance is the same when the jury find a verdict by the peremptory direction of the court. It is proper that the verdict, as in this case, should show on its face that it is made under the order of the court, for this relieves the jury of all responsibility for it. As to the propriety of the action of the court in giving the peremptory instruction, there is more question. The evidence introduced by appellant under the rule in this State was sufficient to take the case to the jury; for, under all the circumstances shown by appellant's proof, the jury would have been warranted, on that proof alone, in concluding.

that Curran had been employed by Lafayette by the authority of appellee Bullitt, and that he was then the managing agent of the guaranty committee. We do not mean to say that this was a fact, but only that there was sufficient evidence to entitle appellant to a submission of his case to a jury on this ground, if we consider his evidence alone. The ruling of the court below seems to have been based on the idea that there could be no recovery against part of the defendants unless there was a recovery against all; that appellant's contract was made in March or April, 1891, before the guaranty committee was formed, and that some of the appellees had until then no connection with the matter. But Lafayette's evidence in rebuttal, after the letter of April 3d was produced, was to the effect that the contract with appellant was not made for a month or two after that, and under this evidence the jury might have found, in view of Lafayette's other statements, that the contract was made after the guaranty committee was formed. The rule in this State is that, if the plaintiff makes out his case, however much the evidence for the defendant may overbalance that introduced by the plaintiff, he is entitled to have the jury pass upon the issue; and that the court can not in such a case give a peremptory instruction, although he may be of opinion that, if the jury should find a verdict for the plaintiff, it should be set aside, and a new trial granted. Thompson v. Thompson, 56 Ky., 22; Buford v. Railroad Co., 82 Ky, 286. In Gossom v. Badgett, 6 Bush, 97, it was held that in an action against two upon an alleged joint contract no judgment could be rendered against one upon proof that the contract was made with him alone. But, after this decision was rendered, by the Act of 1888, the following amendment was made to section 131 of the Code of Practice:

"In an action on a contract alleged to have been made by several defendants, in the event the evidence shall show the contract to have been made with less than all those defendants by whom it is alleged to have been made, this shall not be deemed either a variance or failure of proof, but judgment may be rendered against the party or parties shown to be bound and in favor of those shown not to be bound." Appellant was not, therefore, bound to recover against all the appellees or none, but might recover against some of them, and not against the others. Judgment reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.