## Goins v. North Jellico Coal Company.

(Decided October 19, 1910.)

### Appeal from Knox Circuit Court.

1. Mines and Mining—Propping Roof—Duty of Miner—Failure to Perform Known Duty, Proximate Cause of Injury.—The statute provides: "Each owner, lessee or operator of every mine to which the mining laws of the state apply, shall provide and furnish to the miners employed therein a sufficient number of caps and props, to be sawed square at each end, to be used in securing the roof of their rooms * * * and it is the duty of said miners to keep the roof propped after the miner has selected and worked the same." If a mine owner fails to comply with the statute and by reason of such failure the miner is injured, he may recover damages, provided he himself used ordinary care. But when a miner knows the danger and willfully takes the risk, the failure of the mine owner to furnish the props and caps is not the proximate cause of the injury.

2. Same—Negligence of Miner—Risk Assumed.—Damages can be recovered for negligence or wrongful acts only when the loss suffered was the proximate result of the negligence or wrongful act. Where the miner is to decide when the roof was safe, it was his duty to make it safe, if it was unsafe, and if he fails to do so he takes the risk. He admits he told several people that it was his fault that he got hurt, and in this view we concur on his own evidence.

SAWYER SMITH and RICHARD S. ROSE for appellant.

PITZER D. BLACK, BENJAMIN B. GOLDEN, JAMES D. BLACK, and WILLIAM R. BLACK for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Milton Goins, while getting out coal for the North Jellico Coal Company in a room in its mine, was injured by a piece of slate falling on him and brought this suit against the company to recover for his injuries. At the conclusion of the evidence offered by him, the defendant moved the court to instruct the jury peremptorily to find for it. The court took the motion under advisement, and directed the defendant to go on with its evidence. At the conclusion of the defendant's evidence, the court sustained the motion and the jury having found for the defendant, and the plaintiff's petition being dismissed, he appeals.

When the plaintiff introduces his evidence, and at its conclusion, the defendant moves the court to instruct the jury peremptorily to find for it, whether the motion is then determined by the court or not, it must be decided on the plaintiff's evidence without reference to any facts shown by the evidence introduced on behalf of the defendant. For in so far as there is a conflict in the evidence, the question, if material, is for the jury. The case before us, therefore, must be determined on the plaintiff's evidence without reference to any fact shown by the testimony for the defendant. The facts shown by the plaintiff's testimony are these: Goins was an experienced miner, and had been at work as a miner seven or eight years. He had worked for the defendant five or six years. He and his brother, who was also an experienced miner, had entered into a contract with the defendant to mine for it coal in several rooms in one part of its mine. They were paid by the ton for the coal they got out, and they employed their own assistants. They cut under the coal with a machine furnished by the defendant. They then blew the coal down, and after it was blown down they loaded it on cars. They furnished all the tools they used except the machine for cutting under the coal. It was their duty to get the slate down off the roof of the mine after the coal was blown down, and after they got the slate down, certain hands in the mine, known as gin hands, moved the slate back. The gin hands had nothing to do with the getting down of the slate. Goins and his brother got the slate down and notified the gin hands when they were ready for them to move the slate out of their way. There was several inches of slate above the coal which had to be taken down after a blast was made. About a hundred and fifty men worked in the mine; there were ten or fifteen gin hands who worked under a boss, and waited on all the miners in the way indicated. On the morning of the accident, Goins marked at the mouth of the mine some posts to be brought in, the custom being for the miners to mark the posts and leave them there and they were then brought in on the motor to the room indicated by the marks. He wished some caps also but there were no caps there to be marked. As he went into his room on the motor Goins saw the gin boss at the tool house, and asked him to send him a gin hand, telling him that he had broken the handle out of his hammer, and that he could not gin any slate that day. The boss said that he

would send a gin man or words to that effect.   Goins
went on to his room and commenced loading the coal
which he had blown down the day before.   He set up
three timbers which he had, and did not set up any more
because he had no more, those that he had marked not
having been brought in.   When he had worked four or
five hours a piece of slate fifteen feet long and five feet
wide fell from the roof catching him under it and in-
flicting painful injuries.   The gin man had not been
sent..   It is insisted for him that he was entitled to re-
cover on two grounds; first, because the gin boss had not
sent the gin man, as he had promised; second, because
the company had failed to furnish him with posts and
caps, as it was required to do.

The plaintiff and his brother who are the only
witnesses introduced on his behalf, both state very clear-
ly what they mean by ginning slate.   To gin slate, as they
express it, is to remove it out of the way.   The gin men
were so called because they ginned the slate; they had
nothing to do with the slate until the miners knocked
it down and broke it up so that it could be moved.   The
purpose of having the gin men was to enable the miners
to put in all their time on the coal without consuming
their time in moving the slate out of their way.   The
hammer which Goins referred to was his own hammer,
and the fact that he had broken the handle in his own
hammer imposed no duty on the defendant.   There was
nothing for a gin man to do in Goins' room until Goins
knocked down the slate, and he had knocked none down.
He used a crow bar in getting the slate down; the ham-
mer was used in breaking it up after it was down.   The
fact that the gin man did not come as promised, did not
warrant him in working under the overhanging slate
without knocking it down.   The failure to send the gin
man contributed in nowise to his injury.   It was not
the duty of the gin man to keep the room safe.   It was
only his duty to move the slate out of the way of the
miners after it was down.   The failure therefore of the
boss to send the gin man in nowise affected the respon-
sibility of the defendant for Goins' injury.

The statute provides:

"Each owner, lessee or operator of every mine to
which the mining laws of the state apply, shall provide
and furnish to the miners employed in said mine a suf-
ficient number of caps and props, said props to be sawed
square at each end, to be used by said miners in securing

the roof in their rooms, and at such other working places where by law or custom of those usually engaged in such employment it is the duty of said miners to keep the roof propped, after the miner has selected and worked the same." (Section 2739b, Ky. Stats., subsec. 7.)

If a mine owner fails to comply with the statute and by reason of such failure, the miner is injured, he may recover damages provided he has himself used ordinary care. But where the miner knows the danger and willfully takes the risk, the failure of the owner to furnish the props and caps is not the proximate cause of his injury. Damages can be recovered for negligence or wrongful act only where the loss suffered was the proximate result of the negligence or wrongful act. So the question is was the failure to furnish the props and caps the proximate cause of the plaintiff's injury? The props and caps are ordinarily used to keep the top of the mine from settling after the coal and slate have been taken out. Ordinarily the slate is knocked down before the props which are permanent, are put up. Goins when he went to work knew that he had not knocked down the slate, and he worked there four or five hours with the slate in this condition. He and his brother had always pulled the slate down either with a pick or crow bar. When he went to work he knew that the slate had not been taken down. It was slate that had to come down and he knew it. He could see the edge of the slate from three to five inches thick next to the part where he had pulled down the slate the day before. He knew the slate was liable to fall, and so put under it the three props he had, and says he would have put more if he had had them. He admits he told several people who asked him how he came to be hurt, that it was his fault that he got hurt, and in this view we concur on his own evidence. He was to decide when the roof was safe. It was his duty to make it safe if it was unsafe. His own evidence shows that he knew it was unsafe, and that with this knowledge he undertook to get out the coal that was on the floor before making it safe or knocking down the loose slate overhead, because the slate when knocked down would be in his way in getting out the coal. He trusted that the slate would not fall before he got through; but in this he took the risk. He knew other props had not been put in. The proximate cause of his injury was not the failure of the company to furnish

caps and props, but his failure to make the roof safe or to knock down the slate it was his duty to knock down, and his working under it when he knew its condition. He had other places where he could work in safety.

Judgment affirmed.