## Thomas' Admr. v. Eminence Distilling Co., et al.

(Decided December 4, 1912.)

### Appeal from Henry Circuit Court.

Damages—Action for—Death—Pollution of Creek—Proximate Cause —Peremptory Instruction.—In an action for damages for the death of a child who fell into a creek and swallowed some of the water and died about four months thereafter, based on the ground that the defendants polluted the creek and thereby caused the child's death, evidence examined, and held that plaintiff failed to show that the pollution of the creek was the proximate cause of the child's death, and that a peremptory instruction in favor of the defendants was properly given.

W. O. JACKSON and CLORE, DICKERSON & CLAYTON for appellant.

TURNER & TURNER, CHAS. H. SHIELD, MOODY & BARBOUR and WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Richard Thomas, at the time of his death, was an infant eight years of age. On May 25, 1911, he fell into Fox Run Creek. He died on September 15, 1911. Charging that the defendants, The Eminence Distilling Company, Simon Weil and Charles Bright, unlawfully and negligently polluted and poisoned the waters of Fox Run Creek, and thereby caused the death of the decedent, A. W. Thomas, his administrator, brought this action to recover damages. At the conclusion of all the evidence, the court directed a verdict in favor of the defendants. Judgment was entered accordingly, and plaintiff appeals.

During the years 1910 and 1911, the Eminence Distilling Company was engaged in operating a large distillery near the town of Eminence in Henry County. Charles Bright was its general superintendent. Simon Weil was feeding and slopping a large number of cattle on the premises. In the enclosure in which the cattle were confined, the distilling company constructed a concrete dam. The dirty water and excrement on the surface of the pen were permitted to flow and accumulate in a pool. There the solid matter would settle to the bottom. There was a sluice gate near the bottom, and in the center of the dam. Across this gate was a wire screen with twelve meshes to the inch. When solid matter would settle in the bottom, the sluice gate was opened, and the water and such parts of the solid matter as would pass through the screen were permitted to flow into Fox Run Creek. On the 4th day of April, 1911, there was a cloudburst at the headwaters of Fox Run, and the concrete dam was washed away. A cypress dam was then installed. In May, the cypress dam gave way. When these dams gave way, the accumulated filth ran into the creek and polluted it.

A. W. Thomas, the administrator of the decedent, lived in the years 1910 and 1911 on a farm situated about two miles south of the distillery on Fox Run Creek, which flows through the farm. On May 25, 1911, the decedent, Richard Thomas, fell into the creek and swallowed some of the water. He became sick and vomited more or less. The boy's condition improved for a few days, but about two weeks later, he became quite sick. A physician was then called and diagnosed the case as intermittent fever, and treated the boy for this disease. About the second of July, the physician pronounced the case one of typhoid fever. This disease continued for several weeks, and

when the boy had practically recovered from typhoid fever, he was taken ill with spinal meningitis. On September 15th, he died.

The evidence for plaintiff tends to show that an enormous quantity of decaying and fermenting animal and vegetable matter passed from the pool at the distillery into the creek. As it descended the valley and the stream widened, the polluted waters spread out into shallow pools, depositing on the farm of plaintiff and near his house a large amount of putrid matter, some of which appeared as a foul scum, and some as a rotting sediment, and the odor emitted therefrom was very noisome. Three or four physicians testified that typhoid and meningitis were germ diseases, and that while those germs apparently originated with the human, the liberated germs were carried by the wind, on the bodies, feet and wings of fowls, birds and insects too, and deposited into such pools. That such stagnant and polluted water was a most fertile field and hotbed for breeding large and malignant colonies of disease germs. While such germs are present in almost, all localities, they are generally present in limited numbers, and in such emaciated condition that they are not likely to produce diseases unless the small and weakened colonies are placed in some nutritious and suitable breeding ground, in which event they will multiply and develop into large and malignant colonies, capable of infecting strong and healthy persons. Two or three physicians gave it as their opinion that decedent was infected by germs which came from the polluted water of the creek. It developed, however, on cross-examination that they had made no examination of the waters of the creek, and could not say from personal knowledge that any typhoid or meningitis germs, or, in fact, any disease germs, were present in the creek, or in any of the pools referred to. While giving it as their opinion that the boy died from disease germs coming from the waters of the creek, they admitted that such germs could be carried by insects, flies, bugs, chickens and turkeys, and that it was a pure guess as to where a patient took typhoid fever.

It is unnecessary to give the evidence adduced by the defendant. The rule is that when the plaintiff introduces his evidence, and at its conclusion the defendant moves the court to instruct the jury peremptorily to find for it, whether the motion is then determined by the court or not, it must be decided on the plaintiff's evi-

dence without reference to any fact shown by the evidence introduced on behalf of the defendant; unless that evidence tends to make out a case for plaintiff, for, insofar as there is a conflict in the evidence, the question, if material, is for the jury. Goins v. North Jellico Coal Co., 140 Ky., 323, 131 S. W., 28.

The question is: Did plaintiff succeed in making out a case? Counsel for plaintiff insist that the evidence clearly establishes the following propositions:

"(1)   That the distillery company, Charles Bright and Simon Weil produced the putrid and infectious matter. (2)   That they placed it in a position to be concentrated in a cesspool. (3)   That the cesspool did arrest the flow and hold the water in a stagnant pool for longer and shorter periods, during which time, continued decomposition and decay progressed. (4)   That a stagnant pool containing decaying animal and vegetable matter creates a nutritious and fertile field for the multiplication and development of malignant typhoid and meningital germs, and other matter deleterious to health and life. (5)   That such matter was put by the appellees in a place where it could be released into Fox Run, and that they made preparation by constructing a sluice gate for the express purpose of flowing this putrid matter into the stream at intervals, and after it had been detained long enough to become infected with these pathological germs. (6)   That the appellees did, in pursuance of said intention and preparation, liberate this polluted matter into Fox Run, and deliberately caused it to flow into and upon the premises occupied by the appellant and his intestate. (7)   That when the water was so turned loose, it was emitting a foul odor, and was known as a matter of common knowledge to be so infected. (8) That much of this putrid matter was deposited in the pools of the stream, and in the valley on the premises of the appellant and near to his residence. (9)   That this playful and innocent child fell into a pool of this contaminated water, and swallowed a large portion of it, and his clothes were saturated. (10)   That during the night thereafter he became quite ill, and continuel ill from that date until his death. (11)   That large numbers of flies were gathered upon the fetid matter and continued to bear this noxious and poisonous material from the creek to the residence and surroundings where the child lived. (12)   And show by the attending physician that such stagnant and putrifying flow was filled with

these typhoid and meningeal germs, and that they could be carried to the patient by drinking the water, by coming in contract with abraded surfaces and by being conveyed on the feet and bodies of the fowls and flies. (13) That infection is commonly produced by this means. (14) The attending physician emphatically testified that this stream was so infected and that the boy was infected by that stream, and that the infection caused his illness and death.''

While it is true that several of the above propositions are established by the evidence, it is clear that the main propositions, that is, the ones upon which plaintiff's case depends, are not established. In order for plaintiff to recover, it was necessary to show that the pollution of the creek by defendant was the proximate cause of decedent's death. A possibility or a bare probability that his death was so caused is not sufficient. Plaintiff should have shown the actual presence of disease germs in the creek, that the boy drank water from the creek, and that, within the usual period of incubation after drinking the water, the boy became ill therefrom and died. Physicians who testified for plaintiff admit that they made no examination of the waters for the purpose of detecting the presence of disease germs. Without evidence to this effect, the cause of the boy's death is mere speculation. They admit that he might have taken the typhoid fever or spinal meningitis from germs that came from other sources. They made no examination of the water in the well on plaintiff's farm, or of the water of the spring from which plaintiff and his family drank after the well went dry. These waters may have contained the germs which produced the disease from which the boy died. They admit that the disease might have been transmitted by flies, bugs or other animals that had visited privies or other infected places. As there was no positive evidence of the presence of disease germs in the creek, and as the boy's death occurred nearly four months after falling in the creek, it is just as probable that his death resulted from germs transmitted in some other way, as from germs taken from the creek. Had the case been submitted to the jury, they could have done nothing more than guess at the cause of the boy's death, and it is a well settled rule that a defendant's rights should not be guessed away for one upon whom the burden rests of establishing a cause of action. L. & N. R.

R. Co. v. John A. and Ed. Wathen, 22 Ky. L. R., 82;
Hurt v. L. & N. R. R. Co., 116 Ky., 545; Wintuska's
Admr. v. L. & N. R. R. Co., 14 Ky. L. R., 579; Louisville
Gas Co. v. Kaufman, Straus & Co., 105 Ky., 131.

Judgment affirmed.