# City of Ludlow v. Albers.

(Decided March 23, 1934.)

JACKSON & WOODWARD for appellant.
BLAKELY & MURPHY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This is an action of John C. Albers against the city of Ludlow for personal injury, wherein it is charged he sustained it while traveling in an automobile, on account of "a dangerous. and defective condition of Lake Street," at a point opposite to, and midway between, the property on the street known as Nos. 241 and 239. He charges a hole was in the street, of which the city knew or could have known by the exercise of ordinary care in time to have prevented the accident in which he was injured.

Lake street, where the injury occurred, skirts the brink of an embankment at the foot of which is a lake. The embankment is almost perpendicular, and about 15 feet in height. The street bordering on it varies in width from 22 to 27 feet.

Albers sustained his injury about two or three o'clock a. m. on the 28th or 29th of November, 1931. He was 38 years old, a railroad conductor, and resided in Cincinnati. He was on a leave of absence at the time of the accident. The automobile in which he was traveling was owned by his father, who permitted him to take and use it whenever he desired. He had had it at his home practically all the winter before, and all the summer of 1931, and had used it going to and returning from his work. An anniversary gathering was held at the home of Joseph Kaiser in Ludlow, Ky., on the night Albers was injured. On invitation of Kaiser, Albers and his wife, in his father's automobile, were en route to Kaiser's, when they picked up Joseph Albers and Gus Gilbert, who accompanied them to the home of Kaiser. After arriving at Kaiser's, he, with a crowd of 30 or 40 people, engaged in eating, drinking home-

brew, and dancing, until two or three o'clock in the morning, when Joseph Albers, Gus Gilbert, and others left, entered the automobile, at that time under the control of John C. Albers, with the intention of returning to Cincinnati. John C. Albers and wife first decided to spend the remainder of the night at the home of Kaiser, but changed their minds and decided later to accompany Joseph Albers and Gilbert in the automobile and return to their home. The automobile was two seated, Joseph Albers, Gilbert, and John C. Albers occupying the front, two young ladies, two young men, and Mrs. John C. Albers occupying the rear, seat. On leaving Kaiser's Joseph Albers operated the automobile, going north on Lake street, when it left the street, went over the embankment into the lake, breaking the twelfth dorsal vertebra of John C. Albers. He was immediately carried to a hospital where he remained about two weeks under the care of a physician; then went to the home of his father where he remained two or three months without the care of a physician, until he practically recovered.

The city traversed the petition, denied Lake street was a street under its control, and pleaded contributory negligence. On a trial before a jury a verdict was returned in favor of Albers for the sum of $1,000.

It is here insisted by the city it was entitled at the conclusion of the evidence in behalf of Albers, and also at the conclusion of all the evidence, to a directed verdict; the court erred in refusing to give its offered instructions and in the giving of the instructions which were given. Its right to a directed verdict at the conclusion of all the evidence must be determined on the whole of the evidence. If, on the question of negligence or no negligence of the city, the evidence is equally consistent with either view; i. e., the existence or nonexistence of its negligence, the city is entitled to a peremptory. Louisville & N. R. Co. v. Mounce's Adm'r, 90 S. W. 956, 28 Ky. Law Rep. 933; Rogers v. Felton, 98 Ky. 148, 32 S. W. 405, 17 Ky. Law Rep. 724; Illinois Cent. R. Co. v. Gholson, 66 S. W. 1018, 23 Ky. Law Rep. 2209; Sinclair's Adm'r v. Illinois Cent. R. Co., 129 Ky. 828, 112 S. W. 910; Reliance Coal & Coke Co. v. Louisville & N. R. Co., 203 Ky. 1, 261 S. W. 609; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630, 634, and authorities cited. "The rule in this state is that, if the plaintiff makes out his case, however much the evidence for the defendant may overbalance that intro-

duced by the plaintiff, he is entitled to have the jury pass upon the issue; and that the court cannot in such a case give a peremptory instruction, although he may be of the opinion that, if the jury should find a verdict for the plaintiff, it should be set aside, and a new trial granted. Curran v. Stein, 110 Ky. 104, 60 S. W. 839, 840, 22 Ky. Law Rep. 1575; Irvine v. Greenway, 220 Ky. 388, 295 S. W. 445; C., N. O. & T. P. R. Co. v. Cook's Adm'r, 73 S. W. 765, 24 Ky. Law Rep. 2152; Goins v. North Jellico Coal Co., 140 Ky. 323, 131 S. W. 28; Matlack v. Sea, 144 Ky. 749, 139 S. W. 930; Thomas' Adm'r v. Eminence Dist. Co., 151 Ky. 29, 151 S. W. 47.'' Stanley's Adm'r v. Duvin Coal Co., supra.

An accordant rule is conjecture and speculation must not be indulged in by a jury. Kentucky Glycerine Co. v. Woodruff Dev. Co., 233 Ky. 325, 25 S. W. (2d) 736; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106; Kidd v. Modern Amusement Co., Inc., et al., 252 Ky. 386, 67 S. W. (2d) 466.

The applicability of these principles to the proven facts is the perplexing question confronting us.

It was satisfactorily established that Lake street had been properly dedicated and accepted by the city prior to the accident. An appropriate review of the developed attending facts is essential. Albers admits he was under the influence of intoxicants, and that he did not even know at the time the occupants in the back seat with his wife. He was asked and answered thus:

''Q. Now, you may state what happened after you were all in the machine and the machine was started by your brother and your brother proceeded to drive home? A. Well, the best way I can explain—he started out in low gear and before he got to the center of the street we had been touching holes, or bumps, or whatever that was and I noticed the machine jolting a little bit, but didn't pay much attention to it until he straddled this manhole—he hadn't yet shifted into high, and hit this other pretty deep hole and went to the left side of the road. * * *

''Q. What, if, anything, did you observe, or feel, while you were riding in that car that attracted your attention regarding the movement of the machine? A. Well, from the time it started from

the house until the accident the machine was very rough riding and as it hit this one hole it went to the left side. The only thing I know, the machine may have swerved.''

Joseph Albers admitted he had enjoyed a few drinks after supper, three or four drinks altogether, but claimed he was not intoxicated nor under the influence of the home-brew. He was asked and answered as follows:

''Q. Tell the jury what you did after you all went down and got in the car? A. After we got in the car, I started out with the car toward the center of the road, because the other part of the road toward the right and all over was bumpy and it sorta slopes like that [indicating] like a sorta of a gutter that is around it.

''Q. Toward the right? A. Yes, sir, that was from the road, I guess, to the sidewalk and I got to the center of the road, then going over these bumps, and was then in second gear of the car and there was a manhole in the—right in the center of the street and I straddled this manhole and it seems that my wheel, after passing this manhole, the left front wheel went into a hole and my steering wheel jumped right up from there and run to the side of the road, I steered it, trying to get back to the center of the road and as I did it seemed like the back end had slipped over and I couldn't get it righted and it turned over.

''Q. And where did you go? A. We dumped over into the lake.''
Helen Robertson was asked and answered thus:

''Q. Now, after you got in the car tell the jury what happened, Miss Robinson? A. I felt the machine getting in the rut and swerve off of the road.

''Q. What did you feel when the machine got in the rut as you describe it? A. I felt the machine lurch and then onto the road again and then over the embankment.

''Q. Could you tell how far it ran after it lurched off and came back? A. No, sir.''
Margaret Kor was asked this question:

''Q. All right, just go on in your own way and tell the jury what happened?''
Her answer was:

A. "Well, we started down the street in the car and it seemed like the car gave a lurch to the side and then the next thing I knew we were over in the lake and I got out as fast as I could and ran up to Kaiser's house and told them we had had a wreck."

In response to the question as to what happened at the time of the accident, Grace Bell stated:

"Well, I don't know much about it, only I felt it going over the embankment and my head hit against the iron part there and I was thrown into the lake." Gus Gilbert's statement was:

"Well, we went toward the center of the street when we left the sidewalk and we only went a short distance until there was a drop in the car, I judge there must have been something there from this drop; it was a drop in the street and everything happened there in just a few seconds, then the car went over the embankment."

Joseph Kaiser testified that on November 15, 1931, there were within four, or five, or six feet of the "sewer lid," "toward Oak Street," two holes in the street, the deepest of which "would take about half an automobile wheel," or "at least seven or eight inches deep."

This is a fair resume of Albers' evidence tending to show both the nature of the accident and the cause of his injury as the same relates to the street. It will be observed that of all the witnesses in his behalf, only he and his brother and Helen Robertson intimate or use any language indicating the surface of the street had any connection with the automobile leaving the street. In this respect, the language of Albers, himself, is: "The only thing I know, the machine may have swerved." The words of Joseph Albers are, "I straddled this manhole" and it "seems that my wheel after passing this manhole, the left front wheel went into a hole." Helen Robertson merely states her feelings as indicative of her knowledge of the cause of the automobile running over the embankment. The language of these witnesses is no more than conjecture, surmise, or speculation. The testimony of Kaiser showing the presence of the hole, five, or six, or seven feet from the manhole, does not remove the accident from the field of doubt, conjecture, or speculation into which the testimony of John and Joseph Albers and Helen Robertson undoubtedly places it.

For the city numerous witnesses testified the street was smooth and no holes were in it where it is claimed the accident happened. With the testimony of Kaiser showing the existence of the holes in the street conflicting with that in behalf of the city in this respect, and the evidence in behalf of Albers merely showing sufficient ground for conjecture or speculation that the holes in the street were the proximate or primary cause of the automobile overturning, it cannot be regarded as sufficient to authorize the submission of the case to the jury, or sustain its verdict. Actionable negligence may be established by circumstantial evidence as well as by positive testimony, where it is sufficiently certain as to the proximate cause of the accident to authorize the submission of the case and upon which to rest a verdict of the jury. In every case it is the province of the jury to determine the credibility and weight of the testimony of the witnesses establishing the circumstances, carrying the quality of proof. It is exclusively within the province of the jury to believe one witness rather than a number of witnesses; or one set of witnesses in preference to another set. Edwards v. Druien, 235 Ky. 835, 32 S. W. (2d) 411; Rader v. Goe, 239 Ky. 288, 39 S. W. (2d) 486; Gayheart v. Smith, 240 Ky. 596, 42 S. W. (2d) 877; Breslin v. Blair, 249 Ky. 179, 60 S. W. (2d) 337; Fordson Coal Co. v. Osborn, 245 Ky. 539, 53 S. W. (2d) 937; McGraw v. Ayers, 248 Ky. 166, 58 S. W. (2d) 378. These familiar rules do not apply where the plaintiff's evidence and all reasonable inferences deducible therefrom merely constitute supposition or conjecture.

The street, the embankment, and the route traveled by the automobile, from the point where it left the street to where it stopped in the lake, was inspected on the night of the accident, the morning following, and within a reasonable time immediately thereafter, by a large number of disinterested witness. There were two electric light poles near the street on the side of the embankment; one of which was about 10, and the other about 110, feet from a manhole, in the center of the street. It was abundantly proven the track of the automobile traveled along the brink of the embankment west of the manhole, before it reached the manhole and passed along on the soft ground and continued on the edge of the embankment beyond the manhole for a distance from 25 to 30 feet or more to where the end of old ties protruded about 12 to 18 inches over the bank,

when the wheels of the car struck the ties and caused it to swerve over the bank. This evidence is uncontradicted, and after it was introduced no witness was called in rebuttal. Even if the car "straddled" the manhole, ran into a hole in the street and swerved to the left, as it seemed to the Albers, or as it was felt by Helen Robertson, it is very plain the proximate cause of the car going over the embankment was the running it 25 to 30 feet or more on the margin of the bank, until it struck the end of the protruding ties. This testimony is corroborated by that of Helen Robertson, Margaret Kor, and Grace Bell, in that they say the car swerved and "seemed" or "felt" like it instantaneously went over the bank. The evidence showing the course and the place of the track of the automobile is without contradiction, except the Albers claim the automobile "straddled" the manhole. Even if it be conceded it "straddled" the manhole, ran into the holes in the street and swerved to the left, such fact neither explains nor accounts for the track of the automobile appearing in the soft ground on the margin of the bank for a distance of 25 or 30 feet, or as some witnesses say 40 to 50 feet, where the car wheels came in contact with the protruding ties, leaving marks thereon, then turning over the embankment into the lake. The testimony of the Albers, and those who testified in their behalf, utterly fails to account for the automobile running in a direct course 25 to 30 feet or more on the edge of the bank, striking the ties, then leaving the road. Conceding the testimony of John and Joseph Albers to the effect the automobile "straddled" the manhole, the right wheels running into the hole in the street and thereby causing the car to swerve to the left, contradicts or is in conflict with that in behalf of the city showing the wheels of the automobile passed to the left or west of the manhole, still that in behalf of the city showing the track of the automobile, for a distance north of the manhole from 25 to 30 feet, or as some witnesses put it 40 or 50 feet to the point where the left front wheel struck the protruding ties and instantly swerved over and down he bank into the lake, is uncontradicted and the witnesses testifying thereto are neither impeached nor discredited. Such evidence establishes the negligence of the driver of the automobile in the driving on the brink or margin of the bank, allowing it to strike the ties thereby causing it to swerve over and down the bank as the contributory, if not the primary cause of the injury of Albers.

John C. Albers testified that he gave Joseph Albers directions to drive the car and "supposed he used" his best judgment, and it was about 40 or 50 feet from the manhole where the car went over the embankment. According to his testimony the car did not leave the street and go over the embankment until it had reached 40 or 50 feet beyond the manhole. This testimony corroborates that of the witnesses of the city showing the track of the automobile on the edge of the brink of the bank where it went over the end of the protruding ties.

A fair and unbiased consideration of the evidence in behalf of Albers is convincing that it amounts to no more than a mere supposition that the hole in the road caused the car to swerve and go over the bank. "A supposition is a conjecture based on the possibility that a thing could have happened. It is an idea or a notion founded on the probability that a thing may have occurred, but without proof that it did occur." Louisville & N. R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S. W. (2d) 257, 258; Cochran's Adm'rs v. Chesapeake & O. R. Co., 232 Ky. 107, 22 S. W. (2d) 452.

It was the duty of Albers to establish by competent evidence that the dangerous or defective condition of the street was the proximate cause of his injury, i. e., "the natural and continuous sequence, unbroken by any independent cause, produced the injury and without which it would not have occurred." Kentucky T. & T. Co. v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272; Wright v. L. C. Powers & Sons, 238 Ky. 572, 38 S. W. (2d) 465. He is not entitled to rest the verdict of the jury in his favor, upon vague, uncertain, and speculative statements of himself, his brother, and Helen Robertson. They are insufficient to induce conviction as to what was the efficient or the proximate cause of his injury. Newman v. Dixon Bank & Trust Co., 205 Ky. 31, 265 S. W. 456; Browning v. Nevils, 207 Ky. 308, 269 S. W. 341; Standard Acc. Ins. Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106.

The city was liable for a consequent injury for its failure to maintain Lake street in a reasonable safe condition (City of Danville v. Vanarsdale, 243 Ky. 338, 48 S. W. [2d] 5); but it was not required to make the same absolutely safe for travel. Wright v. L. & N. R. Co., 240 Ky. 73, 40 S. W. (2d) 1003. It was not an insurer

of the safety (City of Paducah v. Konkle, 236 Ky. 582, 33 S. W. [2d] 608) of the occupants of the automobile. It was the duty of Joseph Albers to exercise ordinary care not only for his own safety, but that of John Albers. John was the person legally in charge of the automobile as Joseph was operating it at his direction. John may not invoke the rule applicable to and controlling the rights of an invited guest. Joseph, in operating it, was in law the agent of John, therefore the negligence of Joseph must be imputed to John. If Joseph failed to exercise ordinary care when operating the automobile a distance of 25 or 30 feet on the brink of the embankment, such failure was imputable to John. Goff v. Hubbard, 217 Ky. 729, 290 S. W. 696, 50 A. L. R. 1382; Wood v. I. A. Co., 178 Ky. 188, 198 S. W. 732; Louisville Lozier Co. v. Sallee, 167 Ky. 499, 180 S. W. 841; Thixton v. Palmer et al., 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379. Joseph, on the developed facts, in every sense of the word, in so doing, was the agent of John, and if the negligence of Joseph was the efficient or the proximate or the contributory cause of the automobile striking the end of the ties, and leaving the street, and thereby injuring John, the city is not liable. Gaines' Adm'x v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348.

The city was not duty bound to erect and maintain a barrier along the edge of the embankment to prevent vehicles while using the street, going over it. Its failure to do either did not constitute actionable negligence. Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S. W. (2d) 1032.

It is apparent that it is our view the court erred in refusing to direct a verdict for the city.

The judgment is reversed, with directions to award it a new trial consistent with this opinion.